The next and final argument this morning is in Appeal No. 06-5055, Federal National Mortgage. Mr. Horowitz, we'd like to hear from you as soon as you can be ready. Welcome. Please proceed. May it please the Court. This case presents two issues on appeal. Both of Fannie Mae can enjoy the benefits of the interest netting statute that Congress passed, or instead whether the government can retain the fruits of having collected net interest for a period when no net tax was due. I'm going to focus primarily on the issue that is the subject of Judge Weis' recent opinion, that is, whether the statute of limitations for the 1983 tax year had expired prior to July 22, 1998. Now, addressing that issue, once this form 870 AD was executed, the government was barred, was it not, from coming in and assessing a deficiency relating to other issues other than perhaps the three reserved issues, right? Well, that's a complicated question, Judge Strike, because 870 ADs have been interpreted by the courts to be binding as a matter of contract law, not binding of their own accord because a closing agreement is the only way you can have an agreement that's actually binding. So when new issues come up that were not considered at all in the 870 AD process, the courts have looked at a question of estoppel as to whether that is barred. But I think we can assume, I'm willing to assume for present purposes that other than the reserved issues, there could not be any notice of deficiency. And similarly, the taxpayer couldn't raise any other issues besides the reserved issues. Again, with the same caveat, there's a union-specific case from this Court that goes into all detail on this issue, but yes. So we have the three reserved issues, and then as to two of them, the conditions for invoking the refund claim never came to be, that is, you lost in the tax court, right? That's true. So there was one issue where you had success in the tax court, I assume, on another taxable year, right? Right. Yeah. The agreement was to carry over the consequences from that one year to the 83. So you made a refund claim, and the refund claim was allowed. And I think one of your comments was that the government came in and said that the refund had been made erroneously, correct? It could have just redetermined the deficiency with respect to that issue, exactly. And that is well settled, I think, and not even disputed by the government, as the Supreme Court takes to them. What I read the statute, the limitations period, under 7405, which allows the government to come in and say that the refund was made erroneously and to try to get it back, is a two-year statute of limitations, correct? 7405 has nothing to do with this case, Your Honor. That was a confusion by Judge Weiss. What we're talking about is the regular statute of limitations for the 1983 tax year. But humor me for a moment. Let's assume that it does have something to do with this case, and that I'm correct, am I not, that the government's claim to get back the erroneous refund on this third issue was only available for two years, absent fraud, and that that two-year period expired before 1998. That's correct, right? The erroneous refund statute would have expired before 1998, yes. Right. So why isn't this issue, this third issue, also closed before 1998? Because as I said, we're not talking about the erroneous refund statute. In fact, there is a case directly on point with the hypothetical you just posed on, blanking a little bit on the name, I think it's the Jemelin case or the Jones case that's cited in the briefs, where a refund was issued. More than two years later, the government changed its mind and decided to assess an additional deficiency. The taxpayer went into court and said it's more than two years later, the erroneous refund statute of limitations has expired, and the court said no, because the commissioner is entitled to redetermine the amount of tax under the original statute of limitations, the basic statute of limitations for the taxable year, and that has not expired yet. Yeah, but you just told me that in this case, they couldn't do that. They couldn't assess a new deficiency. No, I didn't. I'm sorry. If I said that, I misspoke. Once the 870-AD was executed, I thought you said that the IRS could not come back in and assess an additional deficiency. But we're talking about the reserved issues. On the reserved issue, they could have assessed a new deficiency. That was not resolved by the 870-AD. There's no agreement on that issue at all, ever. Well, two of the issues were resolved adversely. There was no ability to come back in on those two issues, right? For the taxpayer? For the taxpayer-worthy government. Well, the statute of limitations was open. There was no substantive basis for going in on those issues. Right. So those two were over with. The only possibility is the third issue, as to which this refund claim was made. Yes. And a refund claim is not a final determination. The IRS is free to issue a refund, and then three months later, as long as the statute of limitations is open, three months later, decide that it's going to collect more tax. Well, let me ask you about that. Maybe I'm misunderstanding, but looking at the same form, 870-AD, and the language on page 114 of the appendix, where it lists the reservations, above that it says, if this offer is accepted by the commissioner, which nobody disputes it was, the case shall not be reopened in the absence of fraud, malfeasance, yadda yadda. Is it your view that that sentence is not applicable to the closure brought about by these reservations and these three contingencies? Yes. If you look at the Saltzman Treatise, at the Internal Revenue Manual, they state that that language is referring to the settled issues, not to the reserved issues, which are completely cut out of the settlement, have nothing to do with the settlement. They're excluded. If that language... Well, of course, aren't they part of the settlement? I mean, it's not just, and these issues are out there and they'll be resolved however they're resolved. The reservation of issue is to timely file claims for refunds solely on the grounds that, and so you've limited what you can file, a basis for a refund, depending on what the outcome is in these other proceedings. Isn't that part of what you agreed to with the IRS? I mean, in the absence of this language, it would have been fair play to do anything. This was part of the agreement. In the absence of this language, the reservation language, there would be a concern that this 870-AD would be viewed as having settled the whole case. And so therefore, the taxpayer inserts this language and the IRS agrees to it that the reserved issues are not part of the settlement at all. They are set for, again, if I could just read from the Internal Revenue Manual. But don't you, well, let me just ask you so you can answer everything together. So you don't think that the, there was no agreement to file claims solely on the grounds that, and then the details that are listed in those reservation paragraphs, that doesn't represent some agreement to you? The only agreement reflected in the reservation is the IRS agreed that these claims would not be affected by the settlement. And therefore, the taxpayer reserved the right to file a refund claim on them. Otherwise, there's no agreement with respect to them. There's no agreement on the numbers. If you look at the language here, it just talks about the taxpayer reserving the right to file claims. The government doesn't agree to anything. I thought the agreement was that whatever the tax court ruled would bind everybody and provide the outcome that was then just a matter of a simple mathematical calculation. I don't see where you can find that agreement in this document, Judge Michel. The government agrees to nothing in this document other than that the taxpayer reserves the right to file these claims, that they're not affected by the settlement, which is settlement on the other issues, which are detailed in the closing agreement later, completely distinct issues having to do with bad debts. You don't think that the IRS is bound to assess money in accordance with the later decision of the tax court? Well, of course the IRS is bound by the tax court decision, just like it would be bound without this agreement by the tax court decision. I mean, it's bound to follow the law. In what sense are any of those issues reserved as opposed to agreed upon? They're reserved in the same sense that they were reserved before this 870 AD was issued. The taxpayer had a right to file a refund claim, and when it files a refund claim, the IRS would process that refund claim. If it found that the numbers in the refund claim were correct and that the taxpayer correctly stated the law, then the IRS would issue a benefit, and the case might end up back in the appeals division. So under your theory, I take it you agree that two of these reserved issues were over with because the conditions didn't occur, right? Well, again, I agree that the taxpayer had no basis to file a claim on them, but those issues would not terminate the indefinite extension under the terms of the indefinite extension. Well, but I thought that we were at the point where everything was resolved except the three issues. Two of the three issues, the condition didn't occur, so there was no basis for a claim. That left one issue. The taxpayer on that one issue comes in and files a refund claim in the maximum amount that it could. That's allowed. And your theory is that even though there's a two-year statute of limitations with respect to the erroneous refunds, that this would never cause the statute of limitations to run, that it always remained open, absent some further action. I'm sorry to be repeating myself, Judge Dyke, but I really would like to encourage the Court to forget about the two-year statute for erroneous refunds. Well, I can understand why. The erroneous refund statute is a different sort of thing. It's a special statute that has expired. If they make a mistake when they issue a refund, they put the wrong number in there or something, they have two years to go back and say, oh, that was a mistake. It's not talking about redetermining the tax liability for the tax year. That's governed by the regular statute of limitations for the tax year. The IRS has three years, I think it is, after the filing of a return to determine the tax liability for the taxpayer. In this case, the IRS has executed the Form 872A. But the question is, what's reserved here? And what's reserved here is it says that the only thing that's reserved is that the taxpayer reserves the right to file refund claims and to pursue the refund claims. Everything else is gone. It's just the taxpayer reserves that right. I agree. You agree, so? I agree. The taxpayer reserves that right. And if I might state the question presented here differently, the question presented is whether the language in the indefinite extension form, 872A, whether that language in paragraph 2 was ever triggered by anything that happened here. If it wasn't, then the statute of limitations for the 1983 tax year never expired. Wait, paragraph 2? That's the statute of limitations we're talking about. Paragraph 3. Are we talking about paragraph 3? He's talking about the other form. He's talking about the 872A. Okay. All right. I'm sorry. Yeah, if we could target that for a minute. But we're only talking about the statute. Because that is what the case is about. And at least you agreed that under the reservation, under the 870AD on page 114, that at least the other two questions were concluded on this. Well, later, yes. In 1990, they were still open, but later there was nothing for the taxpayer to do. Well, in 1995, I mean, that's the definition. By 1995, there was nothing for the taxpayer to do with those questions. But the refund claim under paragraph 1 was still open. And again, the issue is whether this indefinite extension, there's no dispute that the statute of limitations for 1983 was indefinitely extended. It has nothing to do with section 7405. That statute was indefinitely extended. There's a way for the parties to terminate that extension. And if they don't terminate it under the terms of the form, then it remains in force. Now, the government chose not to send this form 872T, which is a simple thing to terminate it. So they're forced to argue that it terminated under paragraph 2 of this form. And I think the Court should look at the language there. It's on page 111 of the appendix. And it's very specific about how the agreement can, how the statute of limitations, rather, can expire. It expires only if, indulge me in reading paragraph 2, the agreement ends on the earlier, the above expiration date. Well, can you focus yourself on, just because we can all read it, I guess, the examples. I mean, is your argument mainly revolving around the examples? Well, the examples... And A, are examples of assessments that are not closed? The examples are relevant to this case. But I think before we get to the examples, there have to be at least two, in addition to an assessment, which is not disputed here, there have to be two things that happen for this paragraph to be triggered. There has to be a final determination of tax. There has to be a final administrative appeals consideration. Neither of those happened in this case. But the question is whether there's a final determination. Of tax. And I think that you've agreed that there's a final determination as to two of the reserved issues. And I'm not clear why there wasn't a final determination as to the third reserved issue, because the refund had been paid, that had been claimed by the taxpayer, and the limitations period for the government challenging that was over. Why isn't that a final determination? Because the limitations period for the government challenging that was indefinitely extended in this document. It was not over. So they could have come back ten years later and challenged this, is your theory? Absolutely. And you wouldn't have objected to that? No. No, and again, just like, I mean, there are cases on this, and I do want to emphasize that the government's position here is very different from the position it always takes in these cases where it requires very strict adherence to the form. The Stensla case is a case where the government, where the taxpayer came in and argued that, argued laches, because this extension was never terminated. And the court said, agreeing with the IRS's position, that, look, if you don't send an 872-T, we assume that the party still wanted to have the extension open. Yeah, but those cases deal with paragraph one, not paragraph two. The 872-T is not a requirement of paragraph two, right? No, it's not. We've cited many cases on paragraph two as well. In particular, the Jemelin case, which is reflected at page 162 of the appendix where the IRS itself defines what a final determination of tax is, and that definition would not cover the issuance of a refund under the facts here. Okay. Can I just ask quickly then, now that we've gotten through the first lines of paragraph two, when it gets to the specific examples, which of those examples do you think are applicable to this case? Well, there are only two things that happened in this case after this extension form was signed. Only two IRS actions that could conceivably have terminated the extension. The first was the 870-AD with reservations. That is actually covered by the first example, tax under a partial agreement, and the Drummond case has held that that is not a final determination. The government agrees with that decision, I think. The second thing that happened was the issuance of a refund check in response to Fannie Mae filing its amended return. That happens to be another one of the examples here. Tax reported on amended returns. An assessment of that is not a final determination. So again, the form shows that, with all due respect to Judge Dyke, that the issuance of the refund check cannot be a final determination, and the Supreme Court has said that, Burnett v. Porter. It's really just not disputed, and the IRS itself, one of the field service advices that's in the index page 161-163, the IRS takes the position that the form 870, which is an agreement that is reached when there's a dispute at the examination division level, is also not a final determination because it can be reopened by the service as long as the statute of limitations is open. So this form never expired by its terms. Thank you. Ms. DelSole. Good afternoon, Your Honors. My name is Ellen DelSole, and I represent the United States. What we have here is a situation where, as Judge Dyke pointed out, the parties reached an agreement that did resolve all the issues with respect to the 1983 tax year, and there was a final determination of tax. The form, and I think it's really an untenable position that Fannie Mae is taking, that a taxpayer that sophisticated would have gone through this multimillion-dollar settlement negotiation, reached a final resolution for the 1983 tax year, and then walked away, thinking it was a little different. So what was the final determination, a 95 when they got the refund? That's correct, Your Honor. And what is your answer to his, that he, in his view, he would have probably argued if the government had tried this, but that the government could have come back later with respect to the refund question and just, you know, raised it? Well, here, the question here, for purposes of whether they can get the interest netting, is whether the statute of limitations closed with respect to the 1983 tax year, and that would be the time following a claim for refund, which is six months after the time for assessment expired. So then you get to the question of whether the time for assessment expired, and that depends on whether the Form 872A extension, which was the indefinite extension they executed, had terminated. And that form has two separate provisions. First of all, the parties can terminate with the Form 872T at any time in their negotiations. Or, under Paragraph 2, that paragraph is designed to work so that when the parties have resolved all the issues, the appeals office is done with the matter, and a final determination of taxes arrived at, the time terminates automatically with respect to the extension. The extension ends because there's no final determination. But how do we know? Okay, but I still don't have an answer to my question, which is how do we know? What is there about the refund that makes it a final determination? Could the government not? Could the government not have the ability to come back on that question? Well, I guess the thing that I'm saying is that at that point, the time for assessment, the extended time for assessment ended, and to the extent that the government could have come back on it, and then six months thereafter, the refund, the time for Fannie Mae to seek a refund ended. And to the extent that the government could have then come back and said it's an erroneous refund, that two-year statute of limitations that I referred to applies, but that doesn't affect the question here because the time for Fannie Mae to seek a refund... So you agree with him that it wasn't the government's right to come back for a refund didn't expire after two years? Well, I think to the extent that there... I don't think... I would have to look at... Slow down a little bit. Okay. I think what's relevant here is when the time for assessment ended. And the regular statute of limitations for assessment ended when the IRS paid that refund claim because the parties had finally resolved everything in the 1983 year. The 870 AD laid out specific issues, very specifically, that those issues would be resolved in accordance with the outcome of the other litigation. They specified the cases... Hold on a second. Back up. You got the 872... 870 AD, okay? And that forecloses either the government or the taxpayer from raising issues with respect to the 83 tax year except for the three reserved issues. Do you agree with that? That is correct. Okay. And do you agree that as to two of the issues, that is where those that were determined adversely to the taxpayer in the tax court, that those two issues were over with? They were. Because the reservation was no longer effective because the conditions for a further claim didn't happen, right? That's correct, Your Honor. Okay. Now, we have the third reserved issue. Do you agree that the government's ability to assess a deficiency was limited to matters having to do with the third reserved issue? That is correct, Your Honor. As of December 19... Well, I guess as of the time the other because I guess between 1990 and the time of the refund claim, those issues, there were three issues out there. Okay. And everybody agrees that the actual payment of the refund isn't a final determination, right? No. That, Your Honor, our position is that that is the final determination of tax. That at the point... Well, how could that be the final determination of the tax if the government has the right to go back and contest the refund on the ground that it was paid erroneously? Well, ordinarily... I may have misspoken, Your Honor. I think ordinarily when you have the time for assessment and there's a refund claim after the statute of limitations has ended, that's when that erroneous refund statute kicks in and that's the only way that the government can go back and say it paid too much of a refund. But here you have a settlement. This is not that context. I'm sorry if I misspoke before. This is not that context. What we're dealing with is a situation where the parties reached a settlement. They defined exactly on what basis Fannie Mae could pursue a refund claim and they agreed that the government would pay in accordance with this other tax litigation that was going to govern that year. And when Fannie Mae plugged in the numbers and submitted that claim and the government accepted it and paid it, the parties' settlement was done and that was complete and that is the point at which there was a final determination of under the Form 872A, Paragraph 2, the end of the litigation. Excuse me, the end of the issues for the 1983 tax year in accordance with that litigation that governed it. And at that point, there was a final determination of tax and the Court of Federal Claims correctly said that you look to the whole course of the parties' dealings. I think at the point where the government paid the refund... That doesn't provide much certainty to look to the course of the parties' dealings. Another, quote, totality of the circumstances test, right? Well, I think when you're looking at whether the parties, I mean, what the Form 872A, Paragraph 2 does require is that once the parties have settled all the issues in a case, that that's where the final determination of tax occurs and if you look at cases like this Court's opinion in Union Pacific and the Court of Federal Claims' opinion in the Mobile and in a course of maybe several agreements where the IRS and the taxpayer gradually resolved all the issues, at what point did they get to the end of all the tax issues for that year? And that's how the courts have dealt with that. And I think here, there's no basis for the IRS to have done anything more. There's not really... So under your read of the agreement is that the IRS would not have been able to come back and dispute the... I think that the provisions that it couldn't be reopened would have prevented, in the Form 870AD, that govern the scope of the refund would have limited the IRS's ability to reopen it. And I think that both parties were bound by this and once the last piece of correspondence, the refund claim came saying this is what we're entitled to and the IRS didn't dispute it and paid it, there was a final determination of tax and the tax year was over and that Paragraph 2 is designed to work so that once all the issues have been resolved, there's nothing left to... There's no way that the statute can be just left out there open indefinitely so that the government or the taxpayer could come back years later. Let me ask you a question about an argument that you haven't made. And that is, why is it that when we talk about whether the statute of limitations was open for purposes of the special rule, that we're talking about it's being open for some small issue as opposed to open generally? Well, I think the statute... I mean, I think... So you're reading this, the special rule is saying if it's open, if the statute of limitations for that tax year is open for any purpose, no matter how limited it is, then the conditions of the special rule are satisfied. The special rule is only worded in terms of the statute being open and not closed. And I think there is some merit to that argument, certainly, that if there's a teeny tiny issue open, that that might call into question whether the requirements of the special rule are met. But that's not the government's position. Honestly, Your Honor, I hadn't even really focused on that particular issue. So this is the first time I've really thought about that. But I do think that it is... My initial take on it is that that does have some merit because of the very narrow scope of what was left open here and that all... Essentially, the year was closed for all but this teeny tiny purpose. I'd just briefly like to address the second argument that was raised in the briefs, the suggestion that we reopen the analysis in the first appeal in this case. And I think that the law, the sovereign immunity principle, where you have a waiver of sovereign immunity to provide a recovery that didn't previously exist, Congress's limitations on that have to be strictly construed in the government's failure, still remains the law. And this court recently, in the computer vision case, reaffirmed its... Are you responding to something that Mr. Horowitz said? No, only to his comments in his brief. I mean, to his brief.  I'm sorry, Your Honor. We have your brief answering his brief and we have your live argument answering his live argument. He didn't raise the point. It's outside the scope of your response. I apologize, Your Honor. Are there any other questions? Thank you. Mr. Horowitz will restore two minutes of rebuttal. Thank you, Your Honor. I don't want to use up your time, but could you just briefly tell me why I'm wrong? Yes. The statute of limitations is open for everything. You're suggesting the parties have settled some of the issues and they might be bound by the 870 AD as a matter of contract and promissory estoppel not to relitigate those issues. But the statute of limitations is open, period. It's not just open for a particular issue. So I don't think that objection is an argument the government could have made. I wanted to call the Court's attention to one other document and then make a couple of other points. But just to point to the letter on page 115 that the government relies on, it has a box in it specifically for notifying a taxpayer that the consideration by the Office of Appeals is terminated, the termination referred to in Form 872A, and that box was not checked. So we think that indicates that this was not a final Administrative Appeals consideration, which is a separate requirement other than the final termination of tax for expiration of the Form 872A. I thought the appeals chief said we're sending the file to the service center. Our office has nothing further to do here. Nothing further to do at this time. That's not what he said. Well, it is what he said. He said we have closed this case on the basis agreed upon, and as we pointed out in the brief, the appeals office closes and reopens cases all the time. Well, it's closed except for the reserved issues, right? Yes, and it could have been reopened for the reserved issues. Again, on the reserved issues. In your view, what is it the appeals judge could have done by way of reopening a reserved issue? To do what? Renegotiate the whole thing and say, well, actually, we're not going to agree to be bound by the outcome of the litigation for some other year, for the year 1983? The IRS never agreed to be bound by anything with respect to the reserved issues. If we just focus on the one reserved issue, which we're trying to focus on, in which we filed a refund claim, when Fannie Mae filed that refund claim in 1994, it was just like a new case with respect to that issue. The ball was thrown at the IRS's court to decide what it wanted to do with the refund. It could have agreed, as it turned out that it did, or it could have contested those numbers. I don't see how they could have contested it. They've already agreed to be bound by the outcome of the litigation. The outcome of the litigation dictates the refund. The refund was duly applied for. They have to pay it. I will ask the court one more time to look at the language on page A114 of the reservation, and the government agreed to nothing there other than stating that the taxpayer could still file a refund claim. The government was perfectly free. The IRS says that in its own brief, that they could have disputed the numbers that were filed in the refund claim. It turned out that they didn't, but they could have disputed them. They maybe could have disputed the numbers if there was some kind of mathematical error, but they couldn't dispute that the outcome of the litigation would settle the entitlement to a refund. I'm not sure what you mean by mathematical error. They could have disagreed with how Fannie Mae computed its tax. That's what always goes on whenever the IRS disagrees with something. The reserve issue was completely open for the IRS to do whatever it wanted with. It made no agreement on how it was going to resolve those issues, and therefore this case is pretty much the same as it would have been if those other issues that were settled in the 870AD had never happened. Well, that's the pivot of the case. If we agree with you, you win. If we don't agree with you, then you don't win, so we'll look at it very, very closely. Thank you, Your Honor. We thank both counsel and take the case under advisement.